In the Matter of the Estate of JOHN ADAM SCHURER, Deceased.

Surrogate's Court, Bronx County, December 21, 1935.

The referee was August P. Klein, Esq.

*Charles J. Kemins*, for the executor, John Frederick Schurer.

*Otto Dommasch*, for the objectant, widow.

HENDERSON, S. In this accounting proceeding the widow and objectant has filed the following exceptions to the report of the referee:

"*First.* To so much of the finding of fact contained on page 10, as states: 'The record shows that the transfer of the bonds was a complete transfer, the decedent having divested himself of any control thereof.'

"The objectant also excepts to the conclusion or conclusions of law contained in said report or decision, as follows:

"*Second.* That the Straus bonds are a valid gift *inter vivos.*

"*Third.* That the Totten trusts are no part of the decedent's estate for the purpose of calculating the share of the widow.

" *Fourth*. That the Straus bonds are no part of the estate for the purpose of calculating the share of the widow."

The absolute gifts of the Straus (Bricken) bonds by the decedent to his sons were established without any other possible inference from the evidence. No evidence was submitted in rebuttal of the presumption that absolute trusts were created as to the balances on hand at the death of the decedent in the respective bank accounts wherein he had made deposits " in trust " for his sons. (*Morris* v. *Sheehan*, 234 N. Y. 366.)

The decedent died testate on December 21, 1934. His widow, to whom he was married on May 17, 1933, has duly made her election to take against the will. She does not now maintain that the " Totten trusts " are revoked but contends that the beneficiaries of these trusts take subject to her rights under section 18 of the Decedent Estate Law. Her contention is that in calculating the total amount of the decedent's estate for the purpose of computing her intestate share, the bonds and the trust accounts must be considered and added to the balance in the hands of the accounting executor. This balance now in his hands is $24,358.27.

The bonds were registered in the names of the respective transferees on October 19, 1934. All the trust accounts were opened at various times prior to the depositor's marriage with the objectant, except one in which the balance is $471.22. In the other eight trust accounts the deposits, exclusive of interest and the deposit in one of an amount equal to the withdrawals on the same day from two others, made after such marriage, aggregate $1,585.60. The withdrawals total $585. The balances in the nine accounts amount to $39,339.52.

With reference to the exceptions, the court adopts as its opinion the following extract from the report of the learned referee:

" In her behalf it is contended that the Legislature by the enactment of the provisions of the Decedent Estate Law in effect September 1, 1930, increased the rights of a surviving spouse, and that she as a widow has a lien on all of the assets of the estate, including the trust funds and the Straus (Bricken) bonds, and that any attempt to transfer funds at the moment of death or even before death should be construed as a fraud on her marital rights.

" The decedent died before any of the beneficiaries. There is no proof before me, nor is it contended, that there was any act of disaffirmance or revocation. The presumption therefore is that the ' Totten Trusts ' became absolute at the moment of death. (*Matter of Totten*, 179 N. Y. 112.) At this very same moment the widow's rights sprang into being. A very interesting proposition therefore arises with regard to the trust accounts. As the law now stands,

can a person so regulate the disposition of his property that he may have absolute control of it up to the time of his death, as in this case, but still keep it away from his spouse at the time of his death? If he can then a husband can successfully cut off his spouse with nothing or only so much as he may wish her to have.

" An owner of property has the right to freely alienate his property as he may see fit, as long as the alienation does not interfere with the rights of his creditors or amount to a fraudulent conveyance. (Debtor and Creditor Law, § 276.)

" Section 18 of the Decedent Estate Law placed a limitation upon the *testamentary* disposition of property by giving a surviving spouse cut off by a will a right to take, subject to certain limitations, conditions and exceptions, his or her share of the estate as in intestacy. This election, however, applies only to *testamentary* disposition. (*Matter of Clark*, 149 Misc. 374, Surrogate's Court, Richmond County.) In the case just cited there was no will. The wife contended that her right of election overruled the ' Totten Trusts.' Surrogate SMITH said at page 376: ' The courts have in the past confirmed the right of a spouse to transfer property, free from the claim of husband or wife, in many ways, among others, by gift *inter vivos* or gift *causa mortis*, or by creation of joint tenancy or survivorship, or by survivorship under Sections 249 and 380 of the Banking Law, or as in the present instance by a so-called " Totten Trust, " and as any property so transferred would form no part of an intestate's estate, and the rights of a surviving spouse are not increased by the amendments to said act to include a right to any interest in property transferred other than by will, it follows that any such transfer, either effective in life, or at the instant of death, other than by will can still be made, free from any right of a surviving spouse, to any interest in the property transferred.'

" The fact that the foregoing case concerned an intestacy and the case before me involves a will does not appear to be a distinguishing feature as contended by the objectant. The real point in issue is whether the establishment of a savings bank account trust, not followed by either actual or constructive revocation prior to death, succeeds in so withdrawing the property from the estate so that it cannot be considered a part of it. The presence of a will is only incidental to and not controlling on the question.

" *Matter of Yarme* (148 Misc. 457, Surrogate's Court, Westchester County; affd., 242 App. Div. 693) presents a set of facts very similar to the facts in the present case. The right of a wife to elect against a ' Totten Trust ' was denied. Surrogate SLATER said at pages 458–459: ' It has been the law of the State of New York for a long time that a deposit by one person of his own money

in his own name as trustee for another standing alone, establishes, during the lifetime of the depositor, a tentative trust revocable at will until the depositor dies or completes the gift in his lifetime. In case the depositor dies before the beneficiary, without revocation or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor.'

" ' It amounts " to a judicial addition to the mode permitted by section 21 of the Decedent Estate Law for the transmission of property on death." (*Matter of Reich,* 146 Misc. 616, 618.) It is a legally authorized manner of disposition of the decedent's effects on death to the extent of the property embraced at the time death occurs in degree equal to a will. The Decedent Estate Law in effect September 1, 1930, did not directly or by implication affect this method of disposition of property.'

" *Matter of McCann* (155 Misc. 763, Surrogate's Court, Albany county) holds likewise and protects a ' Totten Trust ' established for the benefit of a sister against the claims of a husband who sought to void them by means of his right of election. True in that case the right no longer accrued to the husband because of a provision in a separation agreement whereby he relinquished all of his rights to her estate. The court held that even though the right did exist it could not be used against the trust.

" Objectant places great stress upon *Matter of Reich* (146 Misc. 616, Surrogate's Court, Kings county) and *Beakes Dairy Co.* v. *Berns* (128 App. Div. 137). These two cases are concerned with the rights of creditors. The former allowed funeral expenses to be subtracted from the corpus of the estate on the theory that a human being must contemplate a decent burial and therefore worked out a constructive revocation of the trust to the extent of the funeral expenses. This was permitted even though the expenses were necessarily incurred after the death and were the debts of the estate rather than the debts of the decedent. *Beakes Dairy Co.* v. *Berns, supra,* deals with the rights of creditors whose rights have accrued prior to the death of the decedent. They were allowed to press their claims against the ' Totten Trust ' involved. It is quite clear, however, that the basis of the courts' decisions lie in the fact that to deny the creditors any remedy would amount to permitting a decedent to make a fraudulent conveyance by this method.

" Objectant's contention that the widow should stand in as good a position as the creditor is chivalrous, though legally untenable. The court's protection of a creditor arises from vastly different reasons than does the protection afforded a widow. The distributive rights of a surviving spouse under section 18 of the Decedent

Estate Law do not result in making such a spouse a creditor of the estate. (*Matter of Wishart*, 149 Misc. 343, Surrogate's Court, Kings county.)

" The objectant further contends that such a transfer by the decedent amounts to a constructive fraud upon her marital rights and therefore must be set aside. It is true that as an independent rule of law, the presence of fraud will open the door to relief in most any situation. This right to have a fraudulent conveyance set aside exists independently of any right of election. The cases cited by the objectant on this point do not support her contention. In none of the cases cited is a mere transfer of property sufficient in itself to spell out a constructive fraud. In all of them there is an element of fraud which is so blatant that it is impossible to ignore it.

" In *Rubin* v. *Myrub Realty Co., Inc.* (244 App. Div. 541) and *Lestrange* v. *Lestrange* (242 App. Div. 74) there was a definite misrepresentation by the prospective husband to his prospective wife as to her share in his property after his death, followed by a deliberate stripping of himself of all his inheritable property. In *Thayer* v. *Thayer* (14 Vt. 107), quoted by the objectant, the court says that the disposition of the property ' in the manner disclosed in this case, was *mala fide*.' These outside facts, not alleged to exist in the case before me, bring equitable principles into play, which do not arise from the fact of a mere transfer.

" It is also contended that a ' Totten Trust ' is in effect a will and should come within the purview of section 18 of the Decedent Estate Law. This contention seems to be without case support. Furthermore such a proposition utterly disregards the stringency of the Statute of Wills regarding the formalities attendant upon due execution of testamentary paper before it can be offered for probate.

" The contention of the objectant that she does not claim that the trusts are void but merely claims that they are subject to her widow's interest, is obviously a compromise argument. Surely if they are not part of the estate they are not subject to any widow's interest. If they stand alone outside of the estate and bear no element of fraud, no actual or constructive revocation, and are subjected to no claims of creditors, the trusts are free and absolute.

" The transfer of the Straus (Bricken) bonds constitutes a gift *inter vivos*, freely and absolutely. To hold that a man cannot give a gift to any one because it would constitute a fraud upon the rights of his wife, would in effect mean that a marriage cuts down the free alienation of property and that an absolute title becomes after

marriage something similar to a life estate which might be termed a marriage estate.

" It can be argued that the intent of the Legislature was to expand the rights of a surviving spouse rather than to decrease them, but the legislative enactment succeeded merely in dissolving dower as an encumbrance upon land and made no balancing provision which would prevent one spouse from alienating all of his or her property in methods other than by will.

" A presumption might arise that a man does not intend to leave his widow a public charge, in cases where she is cut off entirely, which is not the case before me, and if applied to these cases might attach a widow's interest to these transactions. The courts, however, have not considered this question. Such a presumption though beneficial to a surviving spouse would be so prejudicial to the doctrine of free alienation of property that the courts might hesitate to correct legislative mistakes by judicial interpretation. The solution of this problem lies with the Legislature.

" Upon analysis of the facts and the law the only logical conclusion is in support of the claims of the executor that the Straus (Bricken) bonds and the ' Totten Trusts ' are not part of the estate, and, therefore, objections No. 1, No. 2 and No. 8 to the account must be dismissed."

The exceptions are dismissed and the referee's report is in all respects confirmed.

Proceed accordingly.