In the Matter of the Estate of JOHN MORTON GLEN, Deceased.

Surrogate's Court, New York County, December 23, 1935.

*Alexander J. Feild*, for the petitioner.

*Delafield, Thorne & Marsh* [*Robert McC. Marsh* and *Frederic P. Rich* of counsel], for the respondents.

DELEHANTY, S. By appropriate proceedings under section 206-a of the Surrogate's Court Act petitioner presents a claim to a bank book now in the possession of the estate representative. This book evidences a deposit in a savings bank in the names of deceased and petitioner. The individuals who have been cited have filed an answer asking affirmatively that the funds be held to be the property of the estate of deceased and for an adjudication that petitioner has no interest therein despite the character of the deposit and despite the terms of section 249 of the Banking Law of this State.

It is shown by the pleadings that in 1912 deceased and his wife made a contract which settled a matrimonial controversy between them. Under the terms of this contract the wife of deceased resumed her matrimonial domicile with him and made certain waivers and surrenders of rights which the contract recognizes as existing in her favor at the time of its date. By the terms of the contract it was provided:

" *Fourth.* In consideration of the reciprocal obligations and provisions hereinbefore contained, as a condition of the parties coming together again as above mentioned, as a material condition of this agreement and as a provision by each in favour of the other, not to be revoked, (there being no children of the marriage) the parties hereto hereby provide as follows, viz: I the said John Morton Glen hereby assign dispose and convey and devise legate and bequeath to Richard Davidson Billposting Manager, Dundee and residing at 133 Victoria Road, Dundee, the whole means and estate belonging to me at the time of my death or over which I have power of apportionment or disposal, as Trustee and Executor for the following purposes, viz: (First) Payment of my debts, (secondly) payment of four fifths of the residue of my said means and estate to my said wife in the event of her surviving me."

There is no dispute that the wife of deceased survived him nor is there any claim that there was any breach of the contract on her part. The contract is testamentary in character and was admitted to probate in this court as the will of deceased.

It is admitted in the pleadings that in March, 1932, deceased executed and delivered to the savings bank an order in the following text:

" The New York Savings Bank will please put the name of James Glen, whose signature appears below, on my Bank Book No. 383,744, making it a joint account, so that either of us or the survivor can draw the money.

" JOHN M. GLEN."

Thenceforth the bank dealt with the account as a joint account and entered upon its books the notation that the account was that

of " James or John M. Glen, payable to either or to the survivor."
The proof presented upon the hearing established that the book
evidencing the deposit was in the possession of deceased at the time
of his death and that he had had recourse to the account during his
lifetime and had drawn funds therefrom.

Under the broad grant of authority contained in section 206-a
of the Surrogate's Court Act this court has undoubted authority
to " determine the issues, adjudicate the respective interests of the
parties in such property or the proceeds or value thereof, and make a
decree directing delivery or payment as justice requires." There
is presented the question whether section 249 of the Banking Law,
which (in the absence of fraud or undue influence) operates to make
absolute the title of a beneficiary of a so-called Totten trust unre-
voked by a depositor, establishes the right of petitioner to the bank
book and to the deposit; or whether by reason of the instrument
admitted in this court as the will of deceased there is created a
right to the bank book and the fund which requires a holding that
despite section 249 of the Banking Law the funds must be dealt
with as funds of the estate subject to no claim of petitioner thereto.

The tenor of the instrument executed in 1912 is to be inter-
preted against the background which the relations of the parties at
that time furnishes. With that background it cannot be doubted
that the contract entered into by deceased with his wife was a
contract that he would not by testamentary instrument or other-
wise give to others any property subject to his control at the time
of his death. It is not a reasonable interpretation of the instru-
ment to say that it was intended to operate only upon such property
as constituted strictly the estate of deceased at the time of his
death; and that the parties intended that deceased should be free
to make any disposition he chose of his property if only he did not
do it by will. It need not be doubted that deceased had control
of his property while he lived and that he might by reason of family
exigencies have made reasonable donations to his brother, the
petitioner, to relieve the latter's actual needs. That power and
right retained by deceased is not applicable to the transaction pre-
sented here where the essential character of the act is testamentary.
Where, as is the case here, the effective operation of the act of
deceased coincides with his death and the transfer contemplated
by the written direction of deceased to the bank was to occur only
upon death it must be held that the property thus affected was
property which was in the contemplation of " parties and was
within the terms of the contract of 1912 made by deceased with
his wife. Having reached that conclusion the question still remains

whether the court may give the requested affirmative relief to the respondents.

As already stated, section 206-a of the Surrogate's Court Act vests broadly in the Surrogate's Court the power to make any decree which justice requires in respect of a controversy under that section. *Rastetter* v. *Hoenninger* (214 N. Y. 66) furnishes what seems to the court to be precise authority for the grant of relief here sought by the widow of deceased. That court said (p. 71): " It is also too well settled to require the citation of authority that a person may make a valid agreement to make a particular testamentary disposition of his property, * * *. As a will an instrument is revokable at pleasure, but as a contract, if supported by an adequate consideration, it is enforceable in equity."

At page 73: " Each was at liberty during his lifetime to use his own as he saw fit, short of making a different testamentary disposition or a gift to defeat the purpose of the agreement, which was that upon his death each was to leave the property of which he was then possessed in the manner agreed upon. Very likely either during their joint lives might upon notice to the other have revoked; but, after the agreement had been executed by one dying without making a different testamentary disposition of his property and after the acceptance by the other of the benefits of the agreement, it became obligatory upon the latter and enforceable in equity upon his death."

At page 74: " What the parties disabled themselves from doing was the making of a different testamentary disposition after accepting the benefits of the agreement. Each, during his life, remained the absolute owner of his own with all the rights of an owner. Certainly nothing short of plain and express words to that effect should suffice in such a case to limit the use, or to impress a trust upon, the property of each during his own life. Of course, the agreement had to be carried out honestly and in good faith. The survivor could not after accepting the benefits of the agreement make a gift in the nature, or in lieu, of a testamentary disposition or to defeat the purpose of the agreement. Upon the death of the wife, the husband undoubtedly became trustee of her personal estate for the remaindermen."

While there the question was whether the terms of a joint will would be enforced the principles stated are clearly applicable to this contract. Deceased received consideration for his contract and enjoyed it during his life. He was discharged from his defaults in the performance of his obligation to support his wife and received other benefits under the agreement. Thereby he bound himself not to make any disposition of his property which would operate

upon his death to defeat the fair import of his contract. This court has power to grant full relief and to compel performance of the duty imposed on deceased. (*Parsell* v. *Stryker*, 41 N. Y. 480; *Lestrange* v. *Lestrange*, 242 App. Div. 74; *Kine* v. *Farrell*, 71 id. 219; *Hermann* v. *Ludwig*, 186 id. 287; *Johannes* v. *Martian*, 22 id. 561; *Hall* v. *Gilman*, 77 id. 458; *Rubin* v. *Myrub Realty Co., Inc.*, 244 id. 541.)

Accordingly the prayer of the petition is denied and respondents' prayer for affirmative relief is granted.

Submit, on notice, decree accordingly.