MR. JUSTICE MORRISON,
dissenting:
Counsel for appellant and respondent have focused on the question of whether the assets here involved are partnership assets. Such a determination is not dispositive.
Because the parties have presented the case to the District Court on the issue of whether the disputed property was partnership property or joint tenancy property, the District Court decided the case *301 without addressing the true issue. This Court, in its majority opinion, does deal with the issue upon which the case turns, but, in my opinion, erroneously relies upon ancient authority.
The question involved in this case is whether partnership assets can be placed in a bank account so that, upon the death of one partner, the assets will go by survivorship to the other partner, the clear weight of American authority is that partnership assets can be passed by survivorship. I will concede that John Collyer’s, A Practical Treatise on the Law of Partnership, originally published in England in 1832, is generally supportive of the majority’s position. Further support may be found in Hoxie v. Carr (1832), 1 Sumner 173, 12 Fed.Cas. No. 6, 802 P.2d 746. The textual reference and the case authority involve real estate. However, the majority correctly notes that J. Story, Commentaries on the Law of Partnership, asserts that the same law applies to personalty. This treatise, the most modern authority cited by the majority opinion, was published in 1859.
At the time that majority’s treasured treatises were published, Blacks were chattels and women could neither own nor convey real estate. I find it useful to examine some cases decided in this century. District of Columbia v. Riggs National Bank of Washington, D C. (D.C.App. 1975), 335 A.2d 238, stands for the proposition that partnership property can be left by a survivorship. In that case, Waverly and Lulie Dickson, brother and sister, formed a partnership in 1935. Waverly predeceased his sister by three years. When Lulie died, the partnership books carried three savings accounts, with deposits totaling $11,036.65, as partnership assets. Those funds were on deposit in the names of Lulie and Waverly, as joint tenants.
In holding that those assets became Lulie’s by right of survivorship on Waverly’s death, the District of Columbia Court of Appeals stated:
“The UPA sets forth rules for distributing a partnership’s personalty . . . after dissolution. D.C. Code 1973, Sections 41-328 to 41-342. The method set forth there, however, is not exclusive. Subject to the rights of creditors, and in the absence of fraud, partners may agree to a distribution of the property on dissolution which is different from that which would obtain under the UPA in the absence of an agreement. See Ensor v. Ensor, 270 Md. 549, 554, 312 A.2d 286, 289 (1973); Anderson v. Anderson, 215 Md. 483, 488-89, 138 A.2d 880, 883 (1958); Wallner v. Schmitz, 239 Minn. 93, 95-96, 57 N.W.2d 821, 823 (1953).” 335 A.2d at 243-244.
In this case, there is absolutely no evidence to refute the intent of *302 the partners to leave their funds in joint tenancy with right of survivorship. The account itself provides evidence that they did in fact intend to leave the funds in such a manner. When the evidence stands unrefuted, the survivorship disposition must be respected. The District of Columbia court, in Riggs National Bank, supra, addressed this question and said:
“We conclude that if partners maintain savings accounts as joint tenants, and there is evidence that they understood the consequences of joint tenancy, effect will be given to the right of survivor-ship. [Citations omitted.]
<<* * *
“Also, there is no indication that Lulie and Waverly — both astute business people — did not understand and intend the survivorship consequences of joint tenancy.” 335 A.2d at 244.
The case of Stroh v. Dumas (1951), 117 Vt. 13, 84 A.2d 408, is factually very similar to the case at bar. William Pelton and John Dumas formed a partnership to engage in the business of buying and selling cattle. The initial money for the partnership was provided by Pelton in 1938, and deposited in a checking account entitled “W.H. Pelton, Special Account.” In 1943, Pelton and Dumas signed a signature card stating “W.H. Pelton (Special Acct.) subject to withdrawal of either and payable to survivor W. H. Pelton, John H. Dumas June 11, 1943.” the partnership continued over the next several years to deposit its funds in and pay its bills from that account. Upon Pelton’s death, the Supreme Court of Vermont held that the checking account became the sole property of the surviving partner, Dumas, stating:
“No rights of creditors are involved. As between themselves, the partners had the right, to make such disposition of the partnership property as they deemed fit. 40 Am.Jur. 373; 47 C.J. 770; 68 C.J.S. Partnership, Section 75, page 515; Hunter v. Allen, 174 Or. 261, 267, 284, 147 P.2d 213, 148 P.2d 936; Ottaviano v. Lorenzo, 169 Md. 51, 179 A. 530, 534, 535; Green v. Whaley, 271 Mo. 636, 651, 197 S.W. 355; Sargent v. Blake, 8 Cir., 160 F. 57, 64, 17 L.R.A., N.S., 1040, 1046; Upson v. Arnold, 19 Ga. 190, 63 Am.Dec. 302; Lefevre’s Appeal, 69 Pa. 219, 8 Am.Rep. 299, 233; Crane on Partnership 392; Gilmore on Partnerships 128. The Uniform Partnership Act recognizes this right and provides that the intention and agreement of the parties is to control.” [Emphasis supplied.] 84 A.2d at 410.
Other cases which are generally supportive of this position are Hirsch v. Bartels (Fla. 1950), 49 So.2d 531, and Bailes v. Bailes *303 (1977), 261 Ark. 389, 549 S.W.2d 69. I have been unable to find any American cases in the last 100 years that support the majority’s position here.
This case should be reversed and remanded with directions to enter a declaratory order determining that the subject joint tenancy funds passed by right of survivorship.